## KERT *v.* ENDELMAN.

1. REPLEVIN—PRINCIPAL AND AGENT—TITLE TO PERSONALTY—DIRECTED VERDICT.

In an action of replevin for hay, where the testimony showed conclusively that it was purchased by defendant as agent of plaintiff, the court below properly directed a verdict in favor of plaintiff.

2. SAME—IDENTITY—ADVANCEMENTS.

Even if certain of the hay was purchased by defendant with his own money, there was no basis for the jury to determine what particular hay belonged to him, where it appeared from his own testimony that it had been so intermingled that it could not be identified.

202—Mich.—19.

3. SAME—LIENS—CLAIM OF OWNERSHIP—ADVANCEMENTS — INCON-
SISTENT CLAIMS.
    A claim of ownership of the hay by defendant was incon-
    sistent with a claimed lien for money advancements.

4. SAME—WAIVER.
    A lien which could only be claimed on the particular hay
    which defendant advanced the money to purchase, was
    waived by its delivery to plaintiff by defendant.

Error to Chippewa; Fead, J. Submitted January
24, 1918. (Docket No. 8.) Decided July 18, 1918.

Replevin by Charles Kert against Harry H. Endel-
man for the possession of certain hay. Judgment for
plaintiff on a directed verdict. Defendant brings er-
ror. Affirmed.

*Larmonth & Goetz*, for appellant.

*Warner & Sullivan*, for appellee.

BIRD, J. In 1915 plaintiff was a hay buyer in Otta-
wa, Canada. Defendant resided in Montreal and
bought raw furs in and around Sault Ste. Marie. Hav-
ing had a previous acquaintance of several years the
parties met in Ottawa in 1915 and made the following
written agreement:

"The party of the first part agrees to pay to the
party of the second part the sum of fifty (50) cents
per ton on all hay bought by the party of the first
part in Chippewa county, Michigan, through the party
of the second part. The party of the first part also
agrees to pay to the party of the second part one
($1.00) dollar per ton on all hay bought at seventeen
($17) dollars per ton F. O. B. Montreal, according to
the party of the first part's inspection."

After its execution both parties came to the Soo
to investigate the condition of the hay market. Plain-
tiff remained a few days and then returned to Ottawa,
and defendant, assisted by one Crawford, began buy-
ing hay for plaintiff under the agreement. Plaintiff

furnished defendant with a formal contract, naming himself as purchaser, to be used in making contracts with the farmers. These were soon abandoned as the farmers objected to making written contracts, and thereafter defendant purchased the hay in his own name. From the commencement of operations to May 5, 1916, plaintiff advanced defendant $25,557 on account of hay. Up to this date defendant claims he had furnished plaintiff hay to the amount, including storage and commission charges, of $26,474, leaving a balance due him of nearly $1,000. About this time some friction arose between them with reference to the claimed balance. Defendant claims that he urged plaintiff to pay the advancements made by him and also to pay the balance due the farmers for hay purchased but not paid for. Plaintiff denied the correctness of these balances. He therefore came to the "Soo" and undertook to ship out 175 tons which were in storage and defendant declined to permit him. This suit in replevin followed and the hay was taken under the writ. Defendant then claimed in his pleadings and in his testimony that the hay, or some part of it, belonged to him. Upon the proofs being closed, plaintiff requested a directed verdict. This request was granted, the court directing a verdict for the hay seized under the writ and six cents damages.

Counsel insists that this action upon the part of the trial court was error because the question whether defendant owned the hay was a question for the jury. Some claim also appears to be made that the question whether defendant had a lien on the hay was one for the jury.

1. The trial court refused to submit the question of defendant's ownership of the hay because the testimony showed conclusively that defendant purchased the hay in question the same as he did all the other hay. It was the view of the trial court that defendant

was the agent of plaintiff, authorized to purchase hay; and that by reason of that relation he could not purchase and get title to hay which he was under obligation to purchase for his principal. Citing 2 C. J. p. 705; *Pikes Peak Co.* v. *Pfuntner,* 158 Mich. 416.

It was further the view of the court that if defendant were the owner of certain of the hay by reason of being purchased in his own name and with his own money, there was no basis for the jury to determine what particular hay belonged to him because from his own testimony it appeared that it had been so intermingled with plaintiff's hay that it could not be identified. These reasons appear to answer conclusively defendant's assignment of error in regard to the ownership of the hay.

2. We are unable to find anything in the record showing the defendant claimed a lien on the hay for money advancements. He gave notice under the general issue that he would claim that he was the owner of the hay and he made this claim upon the trial. It is quite likely that if his version were true he might have claimed a lien for advancements, but this claim is inconsistent with his other claim of ownership. Another difficulty which presents itself is that if the facts were such that he could have claimed a lien he could have done so on no other hay than the particular hay which he advanced the money to purchase. Much of this had already been delivered to plaintiff by the defendant himself and as to this part the lien would have been waived. *DeWitt* v. *Prescott,* 51 Mich. 304. Had the court instructed the jury that defendant was entitled to a lien on hay which he advanced money to pay for they would have been without data to determine what hay he was entitled to the possession of because defendant himself was unable to point to any particular bale of hay and say he purchased that bale with his own money. Some discussion was had in the

briefs as to the state of the accounts between the parties. We think that is a matter to be disposed of in some other appropriate proceeding. The trial court was right in holding there was no question of fact for the jury.

The judgment is affirmed.

OSTRANDER, C. J., and MOORE, STEERE, BROOKE, FELLOWS, and STONE, JJ., concurred. KUHN, J., did not sit.